DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KITTY KINCAID,**
Appellant,

v.

**WAL-MART, INC.** and **JANE DOE, STORE MANAGER,**[1]
Appellees.

No. 4D2024-2245

[March 18, 2026]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Cynthia L. Cox, Judge; L.T. Case No. 312021CA000868.

Daniel R. Schwartz and Douglas F. Eaton of Eaton & Wolk, PL, Miami, for appellant.

Jack R. Reiter and Sydney Feldman D'Angelo of GrayRobinson, P.A., Miami, for appellee Wal-Mart, Inc.

LOTT, J.

Kitty Kincaid slipped on a gel pack in an aisle near the meat department of a Walmart, suffering injuries. She sued Walmart. The circuit court granted summary judgment for Walmart.

Because no reasonable finder of fact could have found that Walmart had either actual or constructive knowledge of the dangerous condition, we affirm.[2]

---

[1] Kincaid also sued "Jane Doe," the store manager, but did not pursue the action against her.

[2] Kincaid argues, among other things, that the meat bunker was leaking water and asserts Walmart's employees were aware of the leak. This argument was raised for the first time in her motion for rehearing, after summary judgment was entered for Walmart, and is thus unpreserved. *See, e.g., Buyer's Choice Auto Sales, LLC v. Palm Beach Motors, LLC,* 391 So. 3d 463, 468 (Fla. 4th DCA 2024)

## I.    BACKGROUND[3]

In early 2021, Kincaid was shopping in a Walmart meat department when she slid forward while walking in the aisle alongside a refrigerated meat bunker. She did not fall, but caught herself on the cart. After regaining her balance, Kincaid noticed a "squashed" orange gel pack on the floor in the aisle surrounded by a clear, jelly-like substance. Kincaid saw other uncrushed gel packs "tucked under" the meat bunker. She claimed the incident resulted in significant medical treatment, including knee surgery, cervical spine fusion, lumbar fusion, and subsequent lumbar surgery. Although Kincaid had visited this particular Walmart store many times before, she had never seen "anything like" the gel packs in the store.

Scott Garnish, a Walmart stocking coach at the Walmart store at the time of the incident, testified that orange gel packs were typically used by Walmart employees to absorb water from leaks or condensation and were placed in noticeable chains. He explained that gel packs could rupture—most commonly when stepped on by customers—and that a ruptured pack would leave a slippery gel substance on the floor. Mr. Garnish did not recall any ongoing leaks in the meat department, any prior slip-and-fall in that department, or any specific knowledge of Kincaid's incident.

Kincaid sued Walmart in December 2021, which included claims for failure to maintain the premises and failure to warn of a hazardous condition. Walmart moved for summary judgment in April 2024. The circuit court granted the motion, finding no evidence that Walmart had actual or constructive notice of the ruptured gel pack, emphasizing Kincaid's lack of evidence as to "how the ruptured gel bag got out of position, or when it got there, or when it ruptured, or that the condition had existed for such an extended period [of] time that Walmart would be chargeable with constructive notice of the condition" and that generalized testimony about potential various hazards was insufficient to create a genuine issue of material fact regarding Walmart's knowledge of the alleged dangerous condition.

---

("An argument raised for the first time in a motion for rehearing will not preserve the argument for appellate review.").

[3] In considering a motion for summary judgment, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Kiffer v. Ferreira Constr., Inc.*, 413 So. 3d 807, 810 (Fla. 4th DCA 2025) (quotation omitted) (cleaned up).

This appeal follows.

## II.    STANDARD OF REVIEW

We review de novo an order granting summary judgment.  *See Patient Depot, LLC v. Acadia Enters., Inc.*, 360 So. 3d 399, 406 (Fla. 4th DCA 2023); *Gromann v. Avatar Prop. & Cas. Ins. Co.*, 345 So. 3d 298, 300 (Fla. 4th DCA 2022).

Florida Rule of Civil Procedure 1.510, as amended May 1, 2021, revised Florida's summary judgment rule to align with the federal summary judgment standard.  *See In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 317 So. 3d 72, 75 (Fla. 2021).  Our Supreme Court explained that Florida would now follow the *Celotex*[4] trilogy from the United States Supreme Court.  *In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 317 So. 3d at 75.

This change was meant to "recognize the fundamental similarity between the summary judgment standard and the directed verdict standard."  *Id.*  "Both standards focus on whether the evidence presents a sufficient disagreement to require submission to a jury."  *Id.* (citations and internal quotation marks omitted).  "And under both standards, the substantive evidentiary burden of proof that the respective parties must meet at trial is the only touchstone that accurately measures whether a genuine issue of material fact exists to be tried."  *Id.* (citations and internal quotation marks omitted).  Put differently, "[t]o survive summary judgment, the nonmoving party bearing the ultimate burden of proof at trial must come forward with evidence sufficient to withstand a directed verdict motion."  *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citation omitted).

Summary judgment is thus proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fla. R. Civ. P. 1.510(a).

To defeat summary judgment, then, there must be "some alleged factual dispute between the parties" shown to be both "material" and "genuine."  *See Anderson*, 477 U.S. at 248, 106 S. Ct. 2505.

A fact is "material" if it "might affect the outcome of the suit under the

---

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

governing law" and thus "properly preclude[s] the entry of summary judgment." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

A dispute of fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "In Florida it will no longer be plausible to maintain that the existence of any competent evidence creating an issue of fact, however credible or incredible, substantial or trivial, stops the inquiry and precludes summary judgment, so long as the slightest doubt is raised." *See In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d at 76 (citation and internal quotation marks omitted). "The mere existence of a *scintilla* of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). There must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Further, "a moving party that does not bear the burden of persuasion at trial can obtain summary judgment without disproving the nonmovant's case." *In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d at 75. "[T]here is 'no express or implied requirement . . . that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.'" *In re Amends. to Fla. R. Civ. P. 1.510*, 309 So. 3d 192, 193 (Fla. 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 325).

Thus, "[t]he moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.*" Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Where, as is common in motions for summary judgment, the moving party (often the defendant) does not bear the burden of proof at trial, that "initial burden" is "not onerous." *In re Amends. To Fla. R. Civ. P. 1.510*, 317 So. 3d at 77 (quotations and citations omitted). "Where the nonmovant bears the ultimate burden of persuasion at trial on a particular issue, the requirements that Rule 56 imposes on the moving party are not onerous. . . . The movant's initial burden of production in this circumstance is far from stringent and can be regularly discharged with ease." *Id.* (cleaned up) (citations and quotation marks omitted).

"Only when that [initial] burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

Thus, where the movant clears the initial burden, it is ultimately the burden of a non-moving party that bears the burden of proof at trial to demonstrate that genuine issues of material fact exist, and that summary judgment should *not* be granted. *Accord* Charles Alan Wright *et al.*, 10A *Fed. Prac. & Proc. Civ.* § 2727.2 (4th ed. 2025) ("If the summary-judgment movant makes out a prima facie case that would entitle him to a judgment as a matter of law if uncontroverted at trial, summary judgment will be granted unless the opposing party offers some competent evidence that could be presented at trial showing that there is a genuine dispute as to a material fact. In this way the burden of producing evidence is shifted to the party opposing the motion.").

## III.   DISCUSSION

Section 768.0755, Florida Statutes (2020), governs liability for slip-and-falls caused by transitory foreign substances in a business establishment, and requires proof of actual or constructive knowledge of the dangerous condition:

> (1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
>
> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
>
> (b) The condition occurred with regularity and was therefore foreseeable.

§ 768.0755, Fla. Stat. (2020).

Section 768.0755, enacted in 2010 to replace section 768.0710, differs from its predecessor in two ways: (1) by requiring proof of actual or constructive knowledge of the dangerous condition as an element of the claim; and (2) by removing language regarding the owner's negligent maintenance, inspection, repair, warning, or mode of operation. *Pembroke*

5

*Lakes Mall Ltd. v. McGruder*, 137 So. 3d 418, 424–26 (Fla. 4th DCA 2014). Thus, absent actual or constructive knowledge of the dangerous condition, section 768.0755 does not allow for liability "based solely on the business establishment's general failure to maintain the premises." *N. Lauderdale Supermarket, Inc. v. Puentes*, 332 So. 3d 526, 530 (Fla. 4th DCA 2021).

Thus, to survive summary judgment, Kincaid must point to record evidence from which a reasonable trier of fact could find that Walmart or its employees had either actual knowledge or constructive knowledge (within the meaning of section 768.0755) of the ruptured gel pack that caused her fall.

*Actual Knowledge*

"Actual knowledge" of a dangerous condition exists when the business or one of its agents "knows of or creates the dangerous condition." *Dolgen Corp, LLC v. Doty*, 383 So. 3d 864, 867 (Fla. 5th DCA 2024) (citations omitted); *see also Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. 5th DCA 2001).

Here, Walmart easily carried its initial burden to demonstrate the absence of a genuine dispute of material fact as to whether it had actual knowledge. *See In re Amends. To Fla. R. Civ. P. 1.150*, 317 So. 3d at 77. The burden accordingly shifted to Kincaid, who had the ultimate burden of proof at trial, to point to record evidence from which a reasonable finder of fact could determine that Walmart did have such knowledge.

Kincaid argues that a question of fact exists as to Walmart's actual knowledge of the dangerous condition created by the use of gel packs, asserting that (1) employees knew they used gel packs to absorb water; (2) the gel packs were known to rupture and leak a slippery substance; and (3) employees ignored Walmart's policy to place warning signs when using gel packs and failed to monitor the area.

While record testimony showed that Walmart employees would typically place gel packs in a row tucked on the underside of equipment to soak up condensation, and that the gel packs could rupture if full or if stepped on, these facts alone do not suggest actual knowledge. Actual knowledge requires proof that an employee knew the specific dangerous condition existed, not merely that an employee performed an action that *could* create a hazard. *See Whitlow v. Tallahassee Mem'l HealthCare, Inc.*, 421 So. 3d 729, at n* (Fla. 1st DCA 2023) (noting "[a]n employee could knowingly push a stretcher and not necessarily know that he is leaving behind a potentially hazardous condition"); *see also Kozlowski v. Wal-Mart Stores*

6

*East, LP*, 2023 WL 4350567, at *8 (M.D. Fla. May 19, 2023) ("The business owner's knowledge that circumstances might create a foreseeable risk, however, is not equivalent to actual knowledge of the existence of the specific dangerous condition that led to the fall and therefore that knowledge does not satisfy the actual knowledge requirement." (quotation mark and citation omitted)).

Kincaid did not point to evidence that Walmart or its employees, at the time of Kincaid's slip, knew of a ruptured gel pack in the aisle, or knew of a slippery gel substance in the aisle, or had put it there. *See, e.g., Whitlow*, 421 So. 3d at 739 (affirming summary judgment for hospital in a slip-and-fall case where plaintiff slipped on water after exiting an elevator, explaining that though plaintiff proved "employees were pushing a dripping stretcher off the elevator, [she] still needed to show that the [hospital] employees knew that the stretcher was dripping," which "she failed to do"); *Publix Super Markets, Inc. v. Bellaiche*, 245 So. 3d 873, 876 (Fla. 3d DCA 2018) (holding defendant was entitled to a directed verdict because "a reasonable jury could not have found that Publix had actual knowledge of the water that caused [her] to slip and fall" where plaintiff's only evidence of actual knowledge was that plaintiff saw a man holding a mop standing in front of her after she fell, but the only janitor on duty at the time of the incident had not been using anything other than a broom and dustpan, no one testified that the mop the janitor was holding was wet, and the manager testified that his store used dry rayon mops to spot mop its floors, not pre-soaked cotton mops); *Hamideh v. K-Mart Corp.*, 648 So. 2d 824, 825 (Fla. 3d DCA 1995) (affirming summary judgment where "[t]he fact that a store employee may have been stocking shelves with shampoo bottles in the same aisle where the plaintiff slipped and fell on a substance that may have been shampoo is insufficient, without more, to create an inference that the employee caused the shampoo-like substance to be on the floor of the store."). Kincaid simply did not present any evidence demonstrating actual awareness of a dangerous condition by Walmart or its employees.

Kincaid thus failed to carry her burden to create a genuine dispute of material fact that Walmart had actual knowledge. Based on the record evidence, no reasonable finder of fact could determine that Walmart had actual knowledge of the hazard. Summary judgment is proper on this ground.

*Constructive Knowledge*

Constructive knowledge may be proven by circumstantial evidence if a plaintiff can prove "(a) [t]he dangerous condition existed for such a length

of time that, in the exercise of ordinary care, [Walmart] should have known of the condition; or (b) [t]he condition occurred with regularity and was therefore foreseeable." § 768.0755(1), Fla. Stat. (2020).

"To prove a dangerous condition occurred with regularity, the plaintiff must provide evidence of recurring or ongoing problems that could have resulted from operational negligence or negligent maintenance." *Publix Super Markets, Inc. v. Safonte*, 388 So. 3d 32, 36 (Fla. 4th DCA 2024) (quotation and citation omitted).

Again, Walmart easily carried its initial burden to show the absence of a factual dispute. Kincaid thus had the burden to point to evidence creating a genuine dispute of material fact.

Kincaid's position focuses on the second category of evidence that could demonstrate constructive knowledge, section 768.0755(1)(b). Kincaid contends she presented evidence that a dangerous condition occurred with regularity and was foreseeable because Walmart employees used gel packs which could rupture if not monitored or inadvertently move into the footpath of customers. Kincaid asserts this is supported by testimony that slip-and-fall incidents involving smashed gel packs had occurred many times, and Walmart employees were required to place warning signs when using the gel packs, implying they knew of the potential hazard.

But the slip-and-fall incidents at this Walmart shown in the record were mostly in the front of the store from rain/rainwater, or customers leaving freezers open and creating condensation. Mr. Garnish testified that while he had responded to numerous slip-and-falls throughout the store, slips on gel packs were rare and he could not remember any that were in the meat department while he was employed at this Walmart store. Mr. Garnish also did not remember any ongoing leaks in the meat department, or any specific knowledge of Kincaid's incident. Kincaid testified that she had never seen gel packs, despite frequenting this Walmart a couple days a week.

Kincaid did not present evidence that customers, with any frequency, slipped on gel packs that migrated from where the gel packs were initially placed. The vague record evidence that perhaps a few slip-and-falls on gel packs had occurred in a store of this magnitude does not rise to the level of "regularity." *See, e.g., Speedway, LLC v. Cevallos*, 331 So. 3d 731, 735 (Fla. 4th DCA 2021) (reversing verdict for customer in slip-and-fall case against a gas station, noting that "the theory [that buildup occurred with regularity and was foreseeable] requires that she prove that buildup actually occurred at the time and location of her fall and that it contributed

8

to her fall.  She never proved that foundational fact."); *Levine v. Costco Wholesale Grp.*, 2023 WL 3600657, at *5 (S.D. Fla. March 6, 2023) (to take the witness' testimony that he saw liquid on the floor of the meat aisle "more than twice" to mean that he saw liquid "so regularly … that the condition would have been foreseeable, would require the Court to make an unreasonable inference"; holding "that none of the testimony, even if taking as true that some of the employees had seen spills on the floor up to ten times, could support a reasonable juror in finding that Defendant was on constructive notice of any alleged dangerous condition"); *Fonseca v. Wal-Mart Stores, E., LP*, 2019 WL 7371813, at *1 (S.D. Fla. Sept. 23, 2019) (rejecting the position that constructive knowledge is found "by virtue of the dangerous condition's 'regularity'" and holding that a condition occurring "from time to time" does not constitute evidence of regularity); *Delice v. Burlington Stores, Inc.*, 2024 WL 4370882, at *5 (S.D. Fla. October 1, 2024) ("[T]o succeed on this 'regular occurrence' theory of constructive notice, the record must reveal additional evidence suggesting that similar dangerous conditions or incidents occurred with regularity."); *Rodriguez v. B.J.'s Rests., Inc.*, 2023 WL 5507737, at *7 (S.D. Fla. Aug. 24, 2023) (finding a plaintiff failed to establish constructive notice of a liquid substance on the defendant's floor under § 768.0755(1)(b) where the plaintiff had "not alleged any facts concerning a substantially similar incident to the one at issue" (citation omitted)); *Kozlowski*, 2023 WL 4350567, at *9 ("[E]vidence of the existence of a hazard, without more, does not demonstrate constructive knowledge" (citation omitted)); *Salazar v. Norwegian Cruise Line Holdings, Ltd.*, 2016 WL 2961584, at *6 (S.D. Fla. May 23, 2016) (summary judgment was appropriate where plaintiff "provided no evidence at all of any accidents of the sort he experienced in the location he experienced it (or any similar location)" and "[c]onstructive notice cannot be based on mere theory").

Finally, Kincaid's assertion that Walmart had a policy to place warning signs when using gel packs, and that this policy is evidence of a foreseeable recurring hazard, is speculation.  Mr. Garnish's unelaborated testimony was that employees generally placed warning signs "stating that there was . . . a leak somewhere or water somewhere" when using gel packs.  He also testified that employees were to call maintenance and place a caution sign or cone when a hazard was detected.  He could not remember, in this specific instance, if signs were placed.

The existence of a (vaguely identified) clean-up or warning policy alone does not substitute for evidence that a dangerous condition occurred with sufficient regularity to impute constructive knowledge.  The evidence here, without more, would require drawing a series of impermissible inferences that are unsupported by the record.  *Cf. Bennett v. Jetro Restaurant Depot,*

*LLC*, 2024 WL 4471996, at *6 (S.D. Fla. March 8, 2024) ("Plaintiff does not cite to any authority to support the notion that a general maintenance policy constitutes awareness that a dangerous condition occurred with such regularity as to be foreseeable."); *Levine*, 2023 WL 3600657, at *5 ("I fail to see how Defendant's store-wide safety measures invite a conclusion that Defendant was on notice of a dangerous condition on the ground. It seems counterintuitive and against public policy to construe Defendant's safety policies against it, and thereby to use Defendant's efforts to ensure safety on its premises as affirmative evidence that it had constructive notice of a hazard."); *Peer v. Home Depot U.S.A., Inc.*, 2012 WL 1453573, at *3 (S.D. Fla. Apr. 26, 2012) ("[S]imply having policies to prevent incidents does not equate to those instances being foreseeable.") (citing *Wal-Mart Stores, Inc. v. King*, 592 So. 2d 705, 707 (Fla. 5th DCA 1991)). The evidence Kincaid points to does not establish constructive notice.[5]

Kincaid again failed to carry her burden to present a genuine dispute of material fact that Walmart had constructive knowledge. Summary judgment is proper on this ground as well.

## IV.    CONCLUSION

In sum, we find no genuine dispute of material fact such that a reasonable jury could return a verdict for Kincaid. She failed to meet her burden to point to evidence from which a jury could find that Walmart had either actual or constructive knowledge of the ruptured gel pack on which she slipped. We affirm summary judgment for Walmart.

*Affirmed.*

MAY and CONNER, JJ., concur.

*        *        *

***Not final until disposition of timely-filed motion for rehearing.***

---

[5] The "negligent mode of operation" theory of liability is no longer viable under the current statute. Thus "to the extent Plaintiff is arguing that Defendant's negligent maintenance of the property is evidence of constructive notice, this is not a viable theory." *Avila Andrade v. Wal-Mart Stores E., LP*, 2023 WL 6846670, at *4 (S.D. Fla. Oct. 17, 2023) (citing *Pembroke Lakes Mall Ltd. v. McGruder*, 137 So. 3d 418, 424 (Fla. 4th DCA 2014)); *see also Khorran v. Harbor Freight Tools USA, Inc.*, 251 So. 3d 962, 966 n.2 (Fla. 3d DCA 2018) (recognizing that the negligent mode of operation theory is not applicable "in premises liability cases involving a slip and fall on a transitory foreign substance").